USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10/5/11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
EITZEN BULK A/S,

                Petitioner,

   -against-

BANK OF INDIA,

                Respondent.
------------------------------------------------------------- x

**ORDER AND OPINION GRANTING MOTION TO COMPEL ANSWERS TO SUBPOENAS SERVED ON NEW YORK BRANCH OF FOREIGN BANK**

09 Civ. 10118 (AKH)

ALVIN K. HELLERSTEIN, U.S.D.J.:

    This motion to compel represents yet another episode in the saga of petitioner and judgment creditor Eitzen Bulk A/S's efforts to collect on its judgment against non-party judgment debtor Ashapura Minechem Ltd. See Judgment, Eitzen Bulk A/S v. Ashapura Minechem, Ltd., No. 08 Civ. 8319 (Doc. No. 33) (S.D.N.Y. July 24, 2009). After recognizing and confirming, on Eitzen Bulk's motion, an English arbitral award rendered in Eitzen Bulk's favor, see Memo Endorsement, Eitzen Bulk A/S v. Ashapura Minechem, Ltd., No. 08 Civ. 8319 (Doc. No. 28) (S.D.N.Y. July 14, 2009); see also Order, Eitzen Bulk A/S v. Ashapura Minechem, Ltd., No. 08 Civ. 8319 (Doc. No. 32) (S.D.N.Y. July 24, 2009), I entered judgment in favor of Eitzen Bulk, and against Ashapura, on July 24, 2009, in the amount of $36,606,769.74, plus costs in the amount of two hundred fifty dollars and postjudgment interest at a rate of 5% per annum, see Judgment, Eitzen Bulk A/S v. Ashapura Minechem, Ltd., No. 08 Civ. 8319 (Doc. No. 33) (S.D.N.Y. July 24, 2009). Several months later, on December 3, 2009, Eitzen Bulk initiated this proceeding to enforce its money judgment by filing a petition for a turnover order in the New York State Supreme Court, and by serving upon four separate banks, as garnishees, restraining notices and information subpoenas, pursuant to N.Y. C.P.L.R. §§ 5222 and 5224. Respondent State Bank of India, which has since been dismissed from the proceeding,

1

removed the matter from state court to this court on the basis of its status as "a foreign state." 28 U.S.C. § 1441(d). Eitzen Bulk now moves to compel the full compliance of Respondent Bank of India—the only garnishee bank that remains in the proceeding—in answering Eitzen Bulk's information subpoenas and producing responsive documents. I heard oral argument on Eitzen Bulk's motion on May 23, 2011. For the reasons stated, the motion is granted.

Bank of India received Eitzen Bulk's first subpoena, at Bank of India's New York City office, on December 4, 2009. Unger Decl. Supp. Mot. to Compel Ex. 2, at 1. Although Bank of India responded to that subpoena on December 23, 2009, Bank of India limited its responses to information available from within its New York branch. Id. at 2–3. Subsequently, Eitzen Bulk served Bank of India, at its New York City office, with a number of supplemental subpoenas. Unger Decl. Supp. Mot. to Compel Exs. 3, 4, and 7. Bank of India has responded to most of the requests in most of those subpoenas, but not fully, completely, and responsively. In particular, Bank of India has continued to focus its responses on information available from within its New York branch, see, e.g., Unger Decl. Supp. Mot. to Compel Ex. 6, at 1, although counsel represents that the bank also did ask its Mumbai Overseas branch for information, Tr. of Oral Arg., 2–3, May 23, 2011. There is no suggestion that Bank of India has sought responsive information from any of its other branches.

To date, Bank of India has provided no full, substantive response to Eitzen Bulk's requests for the following:

> [a] copy of all document[s] referencing, describing, initiating, or instructing any transaction, transfer of funds, or wire transfer, including Electronic Funds Transfers, which name Judgement Debtor ASHAPURA MINECHEM LTD. or any of its vessels including "ASHA PRESTIGE," "ASHA ASHIK," "ASHA HIMANI," "ASHA MANAN," from Jan 1, 2008, to present[;]
>
> [a] copy of all communications, of any type, to, from, about, or related to Judgment Debtor ASHAPURA MINECHEM LTD., including letters, e-mails,

2

> faxes, or any other form of communication made to, received from, about, referencing or concerning ASHAPURA MINECHEM LTD. and/or its property, debts, credits, investments, transactions, vessels or any other relationship or activities from Jan 1, 2008 to the present[; and]
>
> [s]et forth the date that BANK OF INDIA complied with its obligations under CPLR 5222-A(a)(b)(3), a copy of the communication sent to the debtor, and provide a copy of any response received.

Unger Decl. Supp. Mot. to Compel Ex. 7, at 5. Bank of India has objected to the first two of these three requests on the ground that "[r]esponding to these requests is onerous and unduly burdensome to Bank of India, New York Branch as it does not maintain any account of ASHAPURA MINECHEM LTD" and on the additional ground that "the requested documents cannot be easily obtained to [sic] Bank of India, New York Branch." Unger Decl. Supp. Mot. to Compel Ex. 6, at 4. Bank of India has made no response to the third above-quoted request.

Under New York law, a judgment creditor may serve an information subpoena on a party other than the judgment debtor only if the judgment creditor certifies that it "has a reasonable belief that the party receiving the subpoena has in [its] possession information about the debtor" that will aid in collection of the judgment. N.Y. C.P.L.R. § 5224(a)(3)(i). The information that Bank of India has provided in response to Eitzen Bulk's subpoenas—some of which Bank of India maintains it was under no legal compulsion to provide, but rather disclosed voluntarily—confirms that Ashapura does, in fact, conduct business with Bank of India's "Mumbai Overseas" branch. In addition, Eitzen Bulk has obtained wire transfer activity reports from Wells Fargo showing that, as recently as July 2010, Ashapura received funds sent via wire transfer to at least one account at Bank of India's overseas branch, although Ashapura's account number is redacted from the reports. Under Reply Decl. Support. Mot. to Compel. Ex. 3.

In its memorandum of law in opposition to the motion to compel, Bank of India describes its New York City office as "a branch of Bank of India[,] which has its head office in

3

Mumbai," Resp't's Mem. Opp'n Mot. to Compel 3, and counsel acknowledged at oral argument that the New York branch is "not a separate corporation," Tr. of Oral Arg., 13, May 23, 2011. The State of New York Banking Department likewise considers the New York branch "an office of a foreign bank that is licensed . . . to conduct banking business in New York." Unger Decl. Supp. Mot. to Compel Ex. 11. However, Bank of India states that its New York branch maintains its customers' accounts separately from accounts held at other branches of the bank and "has no authority or control over any accounts held at any other branches." Kaimal Aff. Opp'n Mot. to Compel ¶¶ 12–13. Moreover, Bank of India states that its New York branch "has no direct access to information regarding any accounts held at any other branches." Id. ¶ 15.

Bank of India maintains that its New York branch "has provided all of the information available to it" in response to Eitzen Bulk's subpoenas and has "exceeded all obligations that it has under New York law." Resp't's Mem. Opp'n Mot. to Compel 7. However, by limiting its responses to materials available from within its New York branch, Bank of India has misconstrued the scope of its obligations under New York law.

When a judgment creditor seeks to enforce a money judgment in federal court, the court applies the procedure of the state where the court is located, unless a federal statute applies. Fed. R. Civ. P. 69(a)(1). A judgment creditor also "may obtain discovery from any person," in aid of execution, in accordance with state procedure. Fed. R. Civ. P. 69(a)(2).

New York law allows a judgment creditor to serve three different types of subpoenas—deposition subpoenas, subpoenas duces tecum, and information subpoenas—on judgment debtors and garnishees alike. See N.Y. C.P.L.R. § 5224(a)(1)–(4). A subpoena is a useful tool in the postjudgment enforcement context, as the scope of disclosure is broad: under N.Y. C.P.L.R. § 5223, "[a]t any time before a judgment is satisfied or vacated, the judgment

4

creditor may compel disclosure of <u>all matter relevant</u> to the satisfaction of the judgment, by serving upon any person a subpoena."[1] (emphasis added).

Although Eitzen Bulk labeled as "information subpoenas" the subpoenas it served on Bank of India, the three above-quoted requests—those as to which Bank of India has, as yet, made no substantive response—also seek the production of documents. As a result, those particular requests function not only as part of an information subpoena, but also as a subpoena duces tecum, i.e., a subpoena that "require[es] the production of books and papers for examination at a time and place named therein," id. § 5224(a)(2).

Under New York law, a subpoena duces tecum served on a corporation doing business or licensed to do business in New York reaches all responsive materials within the corporation's control, even if those materials are located outside New York. See id. § 5224(a-1) (establishing that service of subpoena duces tecum subjects corporation to "the full disclosure prescribed by [N.Y. C.P.L.R. § 5223] whether the materials sought are in the possession, custody or control of the [corporation] within or without the state"). In other words, New York law "expressly allows the securing of out-of-state materials by in-state service of a subpoena on the party in control of the materials." Koehler v. Bank of Berm. Ltd., 911 N.E.2d 825, 829 (N.Y. 2009). There is no question that Eitzen Bulk served its subpoenas on Bank of India in state, by service upon Bank of India's New York branch. Nor is there any question that Eitzen Bulk seeks the production of materials in Bank of India's possession, custody, or control. Pursuant to N.Y. C.P.L.R. § 5224(a-1), then, Bank of India must produce the materials Eitzen Bulk seeks, even if those materials are located outside New York.

---

[1] N.Y. C.P.L.R. § 5223 requires that a subpoena "specify all of the parties to the action, the date of the judgment, the court in which it was entered, the amount of the judgment and the amount due thereon" and make clear "that false swearing or failure to comply with the subpoena is punishable as a contempt of court." The subpoenas Eitzen Bulk served on Bank of India meet these specifications.

The New York Court of Appeals, in Koehler, 911 N.E.2d 825, recently reinforced that certain state procedures for the enforcement of money judgments, found in N.Y. C.P.L.R. article 52, have extraterritorial reach. In Koehler, the New York Court of Appeals concluded that "a court sitting in New York that has personal jurisdiction over a garnishee bank can order the bank to produce stock certificates located outside New York, pursuant to [N.Y. C.P.L.R. § 5224(b)]." 911 N.E.2d at 831. In reaching that conclusion, the court explained that postjudgment enforcement "involves a proceeding against a person—its purpose is to demand that a person convert property to money for payment to a creditor." Id. at 829. Thus, "postjudgment enforcement requires only jurisdiction over persons," not jurisdiction over specific property. Id. at 828–29. As long as a court sitting in New York maintains personal jurisdiction over a garnishee, the court may order the garnishee to bring into New York the judgment debtor's property located elsewhere. Id. at 829–31; see also McCarthy v. Wachovia Bank, N.A., 759 F. Supp. 2d 265, 274–75 (E.D.N.Y. 2011) (describing Koehler's holding); JW Oilfield Equip., LLC v. Commerzbank AG, 764 F. Supp. 2d 587, 591–93 (S.D.N.Y. 2011) (reviewing Koehler and concluding that, where court has personal jurisdiction over German garnishee bank, court may order bank "to turn over funds up to the amount of the judgment, regardless of whether those accounts are held in Germany or New York").

The result in Koehler supports the conclusion that Bank of India's subpoena responses must account for information and materials available from branches outside New York. Bank of India is subject to general personal jurisdiction in New York, based on its continuous operation of a branch here. See N.Y. C.P.L.R. § 301; Frummer v. Hilton Hotels Int'l, Inc., 227 N.E.2d 851, 853 (N.Y. 1967) ("a foreign corporation is amenable to suit in [New York's] courts if it is 'engaged in such a continuous and systematic course of doing business here

6

as to warrant a finding of its presence in this jurisdiction.'" (quoting Simonson v. Int'l Bank, 200 N.E.2d 427, 429 (N.Y. 1964))). It is of no moment that Bank of India's New York branch itself claims to have no information regarding Ashapura's bank accounts, potentially held elsewhere, and no control over the materials Eitzen Bulk seeks. Eitzen Bulk's subpoenas seek information and materials from Bank of India as a whole. Under New York law, Eitzen Bulk is entitled to what it seeks. See N.Y. C.P.L.R. § 5224(a-1); Koehler, 911 N.E.2d at 828–31.

Bank of India relies upon the "separate entity rule" to justify its failure to serve full and complete subpoena responses, but the argument is unavailing. The separate entity rule requires that "'each branch of a bank [be] treated as a separate entity for attachment purposes.'" Allied Mar., Inc. v. Descatrade SA, 620 F.3d 70, 74 (2d Cir. 2010) (quoting Det Bergenske Dampskibsselskab v. Sabre Shipping Corp., 341 F.2d 50, 53 (2d Cir. 1965)). As a preliminary matter, Bank of India does not explain how a rule that requires separate treatment for attachment purposes also requires separate treatment for subpoena purposes, particularly in the face of a contrary, and plainly applicable, state rule of procedure. See N.Y. C.P.L.R. § 5224(a-1); see also Intercontinental Credit Corp. Div. of Pan Am. Trade Dev. Corp. v. Roth, 578 N.Y.S.2d 955, 956–57 (N.Y. Sup. Ct. 1990) (discussing, in case predating Koehler, 911 N.E.2d 825, by almost twenty years, the ability of a New York court "to enforce a New York subpoena designed to reveal the whereabouts of assets located in foreign jurisdictions"); Gavilanes v. Matavosian, 475 N.Y.S.2d 987 (N.Y. Civ. Ct. 1984) (holding in contempt a foreign bank doing business in New York that did not respond to judgment creditor's information subpoena served on New York office but seeking information about assets on deposit elsewhere).

A number of the cases Bank of India relies upon to support its invocation of the separate entity rule involved prejudgment attachment rather than postjudgment enforcement

7

under N.Y. C.P.L.R. article 52. See Allied Mar., 620 F.3d at 72; John Wiley & Sons, Inc. v. Kirtsaeng, No. 08 Civ. 7834 (GEL) (DCP), 2009 U.S. Dist. LEXIS 86498, at *1–2 (S.D.N.Y. Sept. 15, 2009); Limonium Mar., S.A. v. Mizushima Marinera, S.A., 961 F. Supp. 600, 603, 605–07 (S.D.N.Y. 1997). In Koehler, the New York Court of Appeals emphasized the fundamental distinctions between the two types of proceedings: whereas "postjudgment enforcement involves a proceeding against a person," and therefore "requires only jurisdiction over persons," prejudgment attachment "operates solely on property, keeping it out of a debtor's hands for a time," and maintaining it as security for a potential judgment. 911 N.E.2d at 828–29. Because prejudgment attachment "operates only against property, [and] not any person," such a proceeding "is typically based on jurisdiction over property." Id. (emphasis omitted). Indeed, the New York Court of Appeals has explained that prejudgment attachment "is effective only if there is within the jurisdiction . . . a debt or property of the debtor." ABKCO Indus., Inc. v. Apple Films, Inc., 350 N.E.2d 899, 900 (N.Y. 1976); see Limonium, 961 F. Supp. at 606–07. Because prejudgment attachment reaches only property within the court's territorial jurisdiction, service of an order of attachment on a foreign bank's New York branch "is insufficient to render accounts outside of New York subject to attachment." Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Advanced Emp't Concepts, Inc., 703 N.Y.S.2d 3, 4 (N.Y. App. Div. 2000). In other words, each branch is a separate entity for purposes of prejudgment attachment.

Bank of India does cite at least two instances after Koehler where a court has applied the separate entity rule in the context of postjudgment enforcement proceedings. See Levin v. Bank of New York, No. 09 Civ. 5900 (RPP), 2011 U.S. Dist. LEXIS 23779 (S.D.N.Y. Mar. 4, 2011); Samsun Logix Corp. v. Bank of China, 31 Misc. 3d 1226A (N.Y. Sup. Ct. 2011). In Levin, 2011 U.S. Dist. LEXIS 23779, judgment creditors sought to enforce their judgment in

the Southern District of New York, but they had obtained a writ of garnishment from the District of Maryland and had served the writ on the garnishee bank's Maryland branch rather than its New York branch. Id. at *47–49. The district court in New York applied the separate entity rule to block execution against assets held by the New York branch. Id. at *51–52. The court concluded that the judgment creditors' service of the writ on the bank's Maryland branch was "not sufficient to attach assets residing in accounts in New York State." Id. at *51. In Samsun Logix, 31 Misc. 3d 1226A, the court granted garnishee banks' motion to dismiss postjudgment enforcement proceedings based on the separate entity rule because the banks' New York branches did not hold the judgment debtors' assets and the banks' branches outside New York had not consented to personal jurisdiction. The court in Levin did not cite Koehler and, in any event, Levin is distinguishable from this case on its facts. The court in Samsun Logix did discuss Koehler, but I do not agree with that court's analysis. In any event, neither Levin nor Samsun Logix represents authority binding upon me.

In this proceeding, I am concerned with the procedures for postjudgment enforcement, not prejudgment attachment. Because Bank of India is subject to general personal jurisdiction in New York, I conclude that the separate entity rule has no application here. See JW Oilfield Equip., 764 F. Supp. 2d at 595 ("Koehler indicates that New York courts will not apply the separate entity rule in post-judgment execution proceedings.").

Bank of India next contends that I lack subject matter jurisdiction under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1330, 1332(a), 1391(f), 1441(d), 1602–1611. Bank of India is an "agency or instrumentality of a foreign state" because the Government of India holds roughly 65% of Bank of India's total outstanding shares. See 28 U.S.C. § 1603(b)(1)–(3); Kaimal Aff. Opp'n Mot. To Compel ¶ 7. "In suits against foreign

9

sovereigns, it is well settled that the FSIA provides the only basis for the subject-matter jurisdiction of U.S. courts." Transatlantic Shiffahrtskontor GmbH v. Shanghai Foreign Trade Corp., 204 F.3d 384, 388 (2d Cir. 2000). Thus, "a foreign state, including its agencies and instrumentalities, is presumptively immune from suit in U.S. courts unless a specific FSIA exception to such immunity applies." Id.

Subject matter jurisdiction is proper here because Bank of India implicitly waived its immunity from suit. See 28 U.S.C. § 1605(a)(1) (providing exception to immunity where foreign state waives "immunity either explicitly or by implication."). Legislative history suggests that courts have found implicit waivers of immunity "'where a foreign state has filed a responsive pleading in an action without raising the defense of sovereign immunity.'" Smith v. Socialist People's Libyan Arab Jamahiriya, 101 F.3d 239, 243 (2d Cir. 1996) (quoting H.R. Rep. No. 94-1487, at 18 (1976), reprinted in 19766 U.S.C.C.A.N. 6604, 6617). Bank of India argues that, because it has not yet filed a responsive pleading, it cannot be deemed to have waived its immunity. However, Eitzen Bulk initiated this proceeding almost two years ago, and Bank of India has not challenged service of process. Bank of India cannot delay indefinitely its filing a responsive pleading. See 28 U.S.C. § 1608(d) (requiring "an agency or instrumentality of a foreign state [to] serve an answer or other responsive pleading to the complaint within sixty days after service has been made").

More importantly, Bank of India provided a response and supplemental response to Eitzen Bulk's first subpoena—including responses to individual requests for information that were not full, complete, and responsive—without objecting on the basis of sovereign immunity. Unger Decl. Supp. Mot. to Compel Exs. 2 and 5. In fact, Bank of India did not object to subject matter jurisdiction until more than one year after Eitzen Bulk had initiated this proceeding and

10

after Bank of India had already served two subpoena responses. See Unger Decl. Supp. Mot. to Compel Ex. 6 at 1. "[D]istrict courts have discretion to determine that the conduct of a party in litigation does constitute a waiver of foreign sovereign immunity in light of the circumstances of a particular case." Canadian Overseas Ores Ltd. v. Compania de Acero del Pacifico S.A., 727 F.2d 274, 278 (2d Cir. 1984). Bank of India's conduct in this case constitutes such a waiver.

Finally, Bank of India argues that I now lack personal jurisdiction over judgment debtor Ashapura, because the Second Circuit recently reversed my denial of Ashapura's postjudgment motion to vacate the prejudgment attachment of electronic funds transfers of which Ashapura was originator or beneficiary, see Eitzen Bulk A/S v. Ashapura Minechem, Ltd., 632 F.3d 53 (2d Cir. 2011). As a general matter, a party to a proceeding lacks standing to assert third parties' constitutional rights. JW Oilfield Equip., 764 F. Supp. 2d at 593 & n.2. Moreover, in the underlying action, Ashapura had the opportunity to—and did—advance its own arguments regarding the extent of my jurisdiction. See Def.'s Mem. Supp. Mot. Reduce Amount of J., Eitzen Bulk A/S v. Ashapura Minechem Ltd., No. 08 Civ. 8319 (Doc. No. 50) (S.D.N.Y. Jan. 4, 2010). Bank of India makes no effort to show that it has third-party standing to raise Ashapura's rights. JW Oilfield Equip., 764 F. Supp. 2d at 593–95. I therefore do not address, in this proceeding to enforce a money judgment, the extent to which I continue to have personal jurisdiction, postjudgment, over the judgment debtor in the underlying action.

The Clerk shall mark the motion (Doc. No. 56) terminated.

SO ORDERED.

Dated: October 5, 2011
New York, New York

ALVIN K. HELLERSTEIN
United States District Judge

11